FREDERICK J. MYERS *vs.* BOSTON AND MAINE RAILROAD.
PATRICK. J. MYERS *vs.* SAME.

Suffolk.   March 15, 1911. — May 18, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Negligence,* Licensee.

A boy eight years of age, who with another boy enters an empty railroad car used for the transportation of milk to fill a bag with pieces of ice by permission of an agent or manager of a milk company, that leases from the railroad corporation the premises adjoining the track on which the car is standing, and is injured by reason of the car being started suddenly by servants of the railroad corporation, is in the relation toward the railroad corporation of a mere licensee at the most, and cannot maintain an action for his injuries against that corporation in the absence of evidence of wanton or reckless conduct on the part of its servants.

TWO ACTIONS OF TORT, the first for personal injuries sustained by the plaintiff, a minor, and the second by the father of the plaintiff in the first case for the loss of his services.   Writs dated March 16, 1907.

In the Superior Court the cases were tried together before *White*, J.   It appeared that on July 19, 1906, the plaintiff in the first case, hereinafter called the plaintiff, received injuries, which necessitated the amputation of his right leg just below the knee, while in an empty car of the defendant on a track adjacent to the premises occupied by H. P. Hood and Sons' milk depot on Rutherford Avenue in that part of Boston called Charlestown, the place where that company received milk consigned to it.   The premises were adjacent to the tracks of the defendant and were leased by H. P. Hood and Sons from the defendant.

The jury took a view of the premises where the accident occurred.   They consisted of a large paved driveway with buildings

and sheds which were used for the storage of milk and there were tracks running from the defendant's railroad into the yard, the tracks running alongside the platforms of the sheds. The place where the accident occurred was adjacent to the platform of the shed on the right of the driveway as one enters. This driveway, as well as the track on which the accident happened, was owned by the defendant and did not come within the lease. The tracks ran from the railroad into this driveway and alongside the shed to a point about one hundred and fifty or two hundred feet from the end of the platform. At the end of the track there was a bunter, so called, which consisted of several large pieces of timber which were braced together so as to prevent the cars on the track from going beyond the point at which the bunter was placed. A car used for the transportation of milk, which was the type of car in which the plaintiff was at the time of the accident, is similar to an ordinary passenger coach in its external appearance with the exception that there are no windows in it. There were platforms at each end of the car with steps leading therefrom and there were doors at each end and on the sides of the car.

It appeared that the plaintiff at the time of the accident on July 19, 1906, was about eight years old; that he was living on Main Street, about a quarter of a mile from the Hood yard; that before the day of the accident he had been down at the Hood yard a half dozen times or more; that on the day of the accident he, with a boy named Leary, went to the yard where they met another boy named Marr; that the Leary boy had a bag with him and that when they got to the Hood yard the plaintiff applied to a man for permission to take ice from an empty car which was standing on the track before mentioned. The plaintiff described the man as " a man standing around there, was a boss, all dressed up, bossing the men." This description was given on the offer to prove that the man addressed was a person in charge or a manager for H. P. Hood and Sons. In response to the plaintiff's request for permission to take the ice from the empty car the plaintiff testified that this man said to him and to the Leary boy, " Yes, go up there to that car. There is an empty car up there and there is some ice on the floor of it." Whereupon the plaintiff and the Leary

boy entered the car, which was standing on the track running alongside the shed warehouse in which the milk was placed after being taken from the cars. The plaintiff took the bag that the Leary boy had and both of them were putting ice into it. When the bag was half filled with ice a man came to the door of the car and said to the plaintiff, "Come on here, kids, we are going to pull this car out in ten minutes," to which the plaintiff and the other boy replied, "All right, sir," and immediately the plaintiff helped Leary to put the bag on Leary's back and started for the end door of the car, which was the door nearest to the bunter; that when he was at a point about two or three feet away from the doorway itself "the car gave a bang. . . . It knocked me around and then another bang came and knocked me on the bunter so that I landed in a sitting position through the open door, hit my foot and squashed it. . . . I got thrown out and it sat me right on the bunter. The car came on it quick. I do not remember much at all after that."

At the close of the plaintiffs' evidence, the judge ruled that as matter of law the plaintiffs were not entitled to recover, and ordered verdicts for the defendant. The plaintiffs alleged exceptions.

The cases were submitted on briefs.

*D. H. Coakley & A. Harrington,* for the plaintiffs.

*A. R. Tisdale,* for the defendant.

HAMMOND, J. These are two actions of tort, the first being for personal injuries sustained by a minor, and the second by his father for loss of services of the minor. The actions were tried together.

There is no evidence that the minor was invited into the car by any one representing or having the right to act for the defendant; and he was therefore at the most a mere licensee. The measure of the defendant's duty was to refrain from wanton or reckless conduct tending to injure him. There was no evidence of such conduct.

The order directing verdicts for the defendant was correct. In each case the entry must be

*Exceptions overruled.*